UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS LONDON SUBSCRIBING TO POLICY NO. HMPL 18-0164 AND HMPL 17-0158, | ) ) ) ) | CASE NO. 5:19-cv-1246 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| KG ADMINISTRATIVE SERVICES, INC., et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for judgment on the pleadings filed by plaintiff Certain Underwriters at Lloyds London Subscribing to Policy No. HMPL 18-0164 and HMPL 17-0158 ("Underwriters" or "plaintiff"). (Doc. No. 16 ["Mot."].) Defendant KG Administrative Services, Inc. ("KG")[1] filed a memorandum in opposition (Doc. No. 34 ["Opp'n"]), and Underwriters filed a reply (Doc. No. 35 ["Reply"]).[2] For the reasons set forth herein, Underwriters' motion is granted.

---

[1] The complaint (Doc. No. 1 ["Compl."]) names five additional defendants: JP Express Service, Inc. ("JP Express"), Rains & Sons Transportation, LLC and Rains & Sons Health Care Benefit Plan (together, "Rains & Sons"), Southern Illinois Motor Xpress, Inc. ("SIMX"), and Trucks For You, Inc. ("TFU"). They "are named as parties for purposes of being bound by the determinations of this Court." (*Id.* ¶ 8.) Defendants JP Express and TFU have jointly filed a motion to dismiss or, alternatively, to transfer the case. (Doc. No. 22.) SIMX filed a response, not opposing dismissal but opposing transfer. (Doc. No. 28.) Underwriters filed a brief in opposition to dismissal and/or transfer. (Doc. No. 29.) The Court need not address the motion to dismiss/transfer and the same is denied without prejudice. For reasons that will be made clear in this opinion, although these five defendants may (or may not) have an *interest* in the outcome of this case, Underwriters has no claim against any of them and, if these five (5) defendants have any claim, it would be against KG. Notably, as discussed herein, they have already filed complaints against KG in other courts (or made a demand). The Court *sua sponte* dismisses these five defendants, without prejudice, due to lack of subject matter jurisdiction, there being no "case or controversy" between Underwriters and any of them. *See* U.S. Const. art. III, § 2, cl. 1 (limiting the jurisdiction of federal courts to "Cases" and "Controversies"); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). This Court takes no position as to whether the instant ruling in any way binds any or all of these five now-dismissed defendants.

[2] At the time the instant motion was filed on August 14, 2019, KG was in default. But the default was set aside for good cause shown (Doc. No. 32), and KG then filed its answer (Doc. No. 33 ["Answer"]). In its opposition brief, KG argues that Underwriters' motion has been rendered moot by KG's answer. (Opp'n at 809 [all page number references

I.    **Legal Standard**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id*. at 581 (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

In considering a Rule 12(c) motion, the allegations in the pleadings are the Court's primary focus. Still, the Court may also consider "'other materials that are integral to the [pleadings], are public records, or are otherwise appropriate for the taking of judicial notice.'" *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 291 (6th Cir. 2015) (quoting *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011)). The Federal Rules of Evidence permit the Court to take judicial notice of a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court[] may take judicial notice on its own[.]" Fed. R. Evid. 201(c)(1). The court may take judicial notice of a

---

are to the page ID number assigned by CMECF].) That is not so. Although Underwriters' motion for default judgment against KG (Doc. No. 15) was rendered moot, the instant motion was not.

fact at any stage of the proceedings. *See Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017) (citing Fed. R. Evid. 201, Advisory Comm. Notes (f)).

## II. Discussion

### A. Background

Underwriters commenced this action on May 31, 2019, seeking rescission and declaratory judgment with respect to an errors and omissions coverage certificate of insurance that it issued to KG (the "Lloyd's Policy"). (Compl. ¶¶ 1, 9; Answer ¶ 9.)[3]

KG is a third-party administrator of self-funded health benefit plans. (Compl. ¶ 3; Answer ¶ 3.) Underwriters alleged that KG was hired by the various other defendants to administer their self-funded health benefit plans (Compl. ¶¶ 4–7), but KG denies those allegations (Answer ¶¶ 4-7). The other defendants have sued KG in district courts elsewhere (*see* Compl. ¶¶ 14, 18, 23; Answer ¶¶ 14, 18, 23), or have made a demand against KG (Compl. ¶ 31; Answer ¶ 31). KG has requested coverage under the Lloyd's Policy, and Underwriters is providing a defense to KG for the lawsuits under a complete reservation of rights. (Compl. ¶¶ 12–13; Answer ¶¶ 12–13).

In light of these complaints/demands, Underwriters claims it is entitled to rescission of the Lloyd's Policy, and a declaratory judgment, based on the language of the Policy and the undisputed facts set forth below.

---

[3] Although the complaint is not crystal clear in this regard, it appears that rescission (under Count I) is directed toward the 2019–2020 Lloyd's Policy (Doc. No. 1-2) and that Count II seeks a declaratory judgment with respect to coverage under both the 2018–2019 Lloyd's Policy (Doc. No. 1-3) and the 2019–2020 Lloyd's Policy. At different points in this discussion, the Court makes reference to particular policy language. Because the two policies appear to be identical, for ease of reference, the Court treats them as the same policy and confines its citations to the 2019–2020 Lloyd's Policy found at Doc. No. 1-2.

On December 28, 2018, KG submitted a renewal application to Underwriters — which KG claims "speaks for itself[]" (Answer ¶ 34) — for a claims-made and reported certificate of insurance for those claims that are first made against the insured and reported in writing during the policy period. (Compl. ¶ 34 & Doc. No. 1-9 ["Renewal Application"].)

The Renewal Application contained the following language:

> The Applicant's failure to report to the Underwriters any claim made against it during the current certificate term, or act, omission or circumstances which the Applicant is aware of which may give rise to a claim before the expiration of the current certificate may create a lack of coverage for each Applicant who had a basis to believe that any such act, error, omission or circumstance might reasonably be expected to be the basis of a claim.

(*Id.* ¶ 36 (quoting Renewal Application at 151 ¶ 3).) The Renewal Application also stated:

> The certificate applied for provides coverage on a claims made and reported basis and will apply only to claims that are first made against the Applicant and reported in writing to the Underwriters during the certificate of insurance period. Claims expenses are within and reduce the limit of liability.

(*Id.* ¶ 37 (quoting Renewal Application at 151 ¶ 4).) KG asserts that this language "speaks for itself." (Answer ¶¶ 36–37.)

On January 11, 2019, KG's President, Robert C. Frazier, Jr., executed a warranty statement attesting as follows:

> After inquiry I, nor any principal, partner, director, officer or professional employee have any knowledge or information of any act, error, omission, fact, circumstance or contentions of any incident which may give rise to a claim being made against us.

(Compl. ¶ 39 (quoting Doc. No. 1-10 ["Warranty Statement"] at 152).) Once again, KG asserts that the Warranty Statement "speaks for itself." (Answer ¶ 39.) As of January 11, 2019, KG had not provided notice to Underwriters of any of the three complaints filed against it (a fact admitted by KG (Answer ¶ 40)) and, in reliance upon the representations contained in the Warranty

4

Statement, Underwriters bound coverage under the Lloyd's Policy effective January 1, 2019 to January 1, 2020. (Compl. ¶ 40.)

The Lloyd's Policy contains a provision incorporating all information and statements provided by the insured in the application and any supplemental information, and indicates that any material misrepresentation will render the policy void. (*Id.* ¶ 41 (quoting Lloyd's Policy at 39–40).) Moreover, as a condition precedent to coverage, the Lloyd's Policy required that a claim be made against an insured and reported to Underwriters within the policy period. (*Id.* ¶ 42 (quoting Lloyd's Policy at 29); ¶ 43 (quoting Lloyd's Policy at 32).) As a further condition precedent to coverage, KG was obligated to report a claim as soon as reasonably possible, but in no event later than 60 days after the expiration of the certificate of insurance. (*Id.* ¶ 45 (quoting Lloyd's Policy at 37).)

### B. Analysis

#### 1. Coverage for the Complaints in Other Courts

Under Ohio law, "the interpretation of insurance contracts in the first instance is one of law for the trial court." *Ins. Co. of N. Am. v. Travelers Ins. Co.*, 692 N.E.2d 1028, 1033 (Ohio Ct. App. 1997) (citing *Leber v. Smith*, 639 N.E.2d 1159, 1163 (Ohio 1994)). "Therefore, a court is precluded from rewriting a contract when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous, the court may not resort to construction of the language." *Id.* (citations omitted).

Under a claims-made policy such as the Lloyd's Policy, claims are covered if the "losses … arise during the policy period, regardless of when the events underlying the claim might have

occurred." *McCarty v. Nat'l Union Fire Ins. Co.*, 699 F. App'x 464, 468 (6th Cir. 2017).[4] "[T]he coverage itself is triggered under a claims-made policy only when the claim is made to the insured and reported to the insurer." *Id.* Therefore, since "[n]otice provisions in insurance contracts are conditions precedent to coverage, [ ] an insured's failure to give its insurer notice in a timely fashion bars coverage." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 842 (Ohio 2002).

Here, the three underlying lawsuits were filed on January 23, 2018, May 23, 2018, and November 11, 2018. (Compl. ¶¶ 14, 18, 23; Answer ¶¶ 14, 18, 23.) As a condition precedent to coverage under the Lloyd's Policy, KG was required to give written notice of claims made against it during the insurance period "as soon as reasonably possible[,]" but in no event later than "60 days after the Certificate of Insurance expiration" on January 1, 2020. (Lloyd's Policy at 37.) KG gave notice of two of the lawsuits on or about April 10, 2019, and the third, on or about April 19, 2019. (Compl. ¶¶ 17, 22, 30; Answer ¶¶ 17, 22, 30.) Therefore, there would be no coverage under the 2018–2019 Lloyd's Policy due to the failure of the condition precedent regarding notice.

In addition, the 2019–2020 Lloyd's Policy was not effective until January 1, 2019, so these January, May, and November 2018 claims were not made against KG within the policy period of 2019–2020 and, therefore, are also not covered under the 2019–2020 Lloyd's Policy.

Underwriters is entitled to a declaratory judgment as to both the policies that it is not obligated to defend or indemnify KG for any liability arising out of the three complaints filed in other courts.

---

[4] This is in contrast to an occurrence-based policy, which "covers losses resulting from events that occur during the coverage period, even though it might be long after the policy period before the events are discovered and the claim is filed." *McCarty*, 699 F. App'x at 468.

## 2. Consequences of False Warranties

Underwriters also argues that, in any event, the 2019–2020 Lloyd's Policy is void *ab initio* due to false warranties made by KG when it applied to renew the 2018–2019 Lloyd's Policy.

The Ohio Supreme Court has observed that "[s]tatements by an insured fall into two classes—those which constitute warranties, and those which constitute representations." *Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (Ohio 1971). "[A] representation is a statement made prior to the issuance of the policy which tends to cause the insurer to assume the risk. A warranty is a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." *Id.* (citation omitted). The difference is important because, if a statement is deemed to be a representation, "a misstatement by the insured will render the policy voidable[,]" whereas "[i]f the statement is a warranty, a misstatement of fact voids the policy ab initio." *Id.*

"[T]he mere fact that a statement of an insured is incorporated in a policy does not necessarily make such statement a warranty." *Id.* Rather, if it is the insurer's purpose "to provide that a misstatement by the insured shall render the policy void ab initio, such facts must appear clearly and unambiguously from the terms of the policy." *Id.*

> *Boggs* established a two-pronged test for determining whether a misstatement qualifies as a warranty. *Am. Family Ins. Co. v. Johnson*, 8th Dist. No. 93022, 2010-Ohio-1855, 2010 WL 1712240, ¶ 16. The first prong requires that the "representation [ ] plainly appear on the policy [ ] or be plainly incorporated into the policy * * * ." *Id.* Under the second prong, the policy must plainly warn that a misstatement or misrepresentation renders the policy void from its inception. *Id.*

*Goodman v. Medmarc Ins.*, 977 N.E.2d 128, 132 (Ohio Ct. App. 2012) (alterations in original). As to the second prong, courts require that "the policy . . . unequivocally state that a misrepresentation *will* void the policy[,] [and] a clause that gives the insurer discretion to void the policy will not

7

suffice." *O'Donnell v. Fin. Am. Life Ins. Co.*, 328 F.R.D. 174, 182 (S.D. Ohio 2017) (emphasis in original) (comparing cases).

The Lloyd's Policy in this case unambiguously indicated the consequences of concealment or misrepresentation of a material fact in the application. By acceptance of the Certificate of Insurance, KG warranted that:

1. All of the information and statements provided to Underwriters by the Insured, including but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the Insured;

2. This Certificate of Insurance is issued in reliance upon the Insured's representations;

3. This Certificate of Insurance, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the Insured to the Underwriters (all of which are attached hereto and deemed to be incorporated herein) embody all of the agreements existing between the Insured and the Underwriters and shall constitute the entire contract between the Insured and the Underwriters; and

4. Any material misrepresentation or concealment by the Insured or the Insured's agent will render the Certificate of Insurance null and void and relieve the Underwriters from all liability herein.

(Lloyd's Policy at 39–40.) Pursuant to the above language, KG's Warranty Statement that there was no "knowledge or information of any act, error, omission, fact, circumstance or contentions of any incident which may give rise to a claim being made against [KG]" (Warranty Statement at 152) was expressly incorporated as part of the insurance contract. Because that was a false statement, the 2019–2020 Lloyd's Policy was rendered void *ab initio*. *See Horton v. Safe Auto Ins. Co.*, No. 00AP-1017, 2001 WL 664421, at *3 (Ohio Ct. App. June 14, 2001) (finding language in the policy that it would be "null and void cancelled" if the insured provided false information in

the application sufficient under *Boggs* to warn the insured of the consequence of providing such false information).

In its opposition brief, KG argues in conclusory fashion that it was not until April 2019 that it "determined that these were 'claims' pursuant to the Lloyd's [P]olicy." (Opp'n at 810.) The claims were therefore, in KG's view, "noticed by KG to [Underwriters] as soon as reasonably possible." (*Id.*) KG also argues that, when the warranty was made on January 11, 2019, the statement "was not a material misrepresentation" because KG was "not aware of any incident which may give rise to a claim[.]" (*Id.*) Finally, KG argues that the three complaints "set forth numerous claims against KG[,] . . . [s]ome [of which] can be construed as claims involving acts or omission in KG's performance of professional services not subject to the exclusions within the policy." (*Id.* at 811.)

In reply, Underwriters argues that the "lawsuits clearly constitute 'claims' as the term is defined" in the Lloyd's Policy. (Reply at 816.) The Lloyd's Policy defines "claim" to include a lawsuit:

> Claim means a demand for money or services naming the Insured arising out of an act or omission in the performance of professional services. **A claim includes the service of suit or the institution of an arbitration proceeding against the Insured.**

(Lloyd's Policy at 34 (emphasis added).)

In light of the Lloyd's Policy's definition of "claim," KG clearly knew of the existence of the claims in the three lawsuits and falsely warranted otherwise in the Renewal Application, rendering the 2019–2020 Lloyd's Policy void *ab initio* by its terms. Although the TFU Demand Letter occurred within the policy period, *i.e.*, April 2, 2019 (*see* Doc. No. 1-8), and although notice was timely provided by KG on May 2, 2019 (*see* Compl. ¶ 33), Underwriters is entitled to a

declaratory judgment that it is not obligated to defend or indemnify KG for any liability arising out of the TFU Demand Letter because the 2019–2020 Lloyd's Policy is void *ab initio* due to the false warranty.

### 3. Exclusion of Coverage Under the Lloyd's Policy

Underwriters also argues that the Lloyd's Policy unambiguously excludes coverage for the liabilities alleged in the three complaints and the demand letter. Given the discussion above, the Court need not address this contractual argument.

## III. Conclusion

For the reasons set forth herein, defendants JP Express Service, Inc., Rains & Sons Transportation, LLC, Rains & Sons Health Care Benefit Plan, Southern Illinois Motor Xpress, Inc., and Trucks For You, Inc. are *sua sponte* dismissed without prejudice due to lack of subject matter jurisdiction, there being no case or controversy alleged in the complaint as between plaintiff Underwriters and any of these five (5) defendants.

Plaintiff Underwriters' motion for judgment on the pleadings (Doc. No. 16) is granted. Underwriters is entitled to rescission of the 2019–2020 Lloyd's Policy because it is void *ab initio* due to KG's false warranty. As a result, Underwriters is entitled to a declaratory judgment that it is not obligated to defend and/or indemnify KG as to any liability in the TFU Demand Letter. Further, due to the failure of a condition precedent to coverage under the 2018–2019 Lloyd's Policy (*i.e.*, timely notice), Underwriters is entitled to a declaratory judgment that it is not obligated to defend and/or indemnify KG with respect to the three lawsuits filed in other courts.

There being nothing further before this Court,[5] this case is dismissed.

**IT IS SO ORDERED**.

Dated: December 12, 2019

HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE

---

[5] The Court acknowledges KG's counterclaim for declaratory judgment. (Doc. No. 33.) However, the instant ruling either resolves the allegations therein or renders them moot.